IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **EAGLE EYE DISTRIBUTING, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:09-CV-0095-L** |
| | § | |
| **BEN PARKER, INC., et al.,** | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are: (1) Motion of Trent Bishop Produce Services, LLC and F&B Holdings to Rule on Defendants' Objections to PACA Trust Claims, filed July 14, 2009; (2) The Rio Vista Group's Motion to Rule on Objections, filed July 31, 2009; (3) Motion to Rule on Objections to PACA Trust Claims of Plaintiff and Certain Intervening Plaintiffs, filed July 31, 2009; (4) Griffin Holder Co.'s Motion for Order Overruling Objections to, and Validating its PACA Trust Claims, filed July 31, 2009; (5) The Fowler Packing Group's Omnibus Motion to Rule on the Various Objections Filed to the PACA Trust Claims of the Fowler Group, filed July 31, 2009; and (6) Opposed Motion for Leave to Amend Declarations of Trent Bishop Produce Services, LLC and F&B Holdings LLC, filed September 3, 2009. After careful consideration of the motions, briefs, record, and applicable law, the court **grants** Motion of Trent Bishop Produce Services, LLC and F&B Holdings to Rule on Defendants' Objections to PACA Trust Claims; **grants** The Rio Vista Group's Motion to Rule on Objections; **grants** Motion to Rule on Objections to PACA Trust Claims of Plaintiff and Certain Intervening Plaintiffs; **denies** Griffin Holder Co.'s Motion for Order Overruling Objections to, and Validating its PACA Trust Claims; **grants** The Fowler Packing Group's Omnibus

**Memorandum Opinion and Order –  Page 1**

Motion to Rule on the Various Objections Filed to the PACA Trust Claims of the Fowler Group. The court **sustains in part** and **overrules in part** the objections set forth in these motions. The court **denies** Opposed Motion for Leave to Amend Declarations of Trent Bishop Produce Services, LLC and F&B Holdings LLC.

## I.      Background

Plaintiff Eagle Eye Distributing, Inc. filed its Complaint to Enforce Payment from Produce Trust on January 15, 2009. Plaintiff brought claims against Defendants Ben Parker, Inc., Bennie Parker, David Parker, and Susan Parker pursuant to the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e(c)(5) ("PACA"). On January 22, 2009, the court entered a temporary restraining order against Defendants and set a preliminary injunction hearing. Thereafter, several parties moved to file complaints in intervention, which the court granted.

The parties agreed to entry of a preliminary injunction, and the court entered an order setting forth the PACA claims procedure on February 17, 2009 (the "PACA Claims Order"). The PACA Claims Order established a PACA trust account, allowed the parties to liquidate certain of Defendants' assets, and created a PACA claims procedure. Potential PACA creditors were required to file complaints in intervention by April 17, 2009, and to file objections by May 8, 2009. Defendants were permitted to respond to the objections by May 29, 2009. The parties were allowed to file motions to rule on objections by July 31, 2009. The pending motions, with one exception, seek a ruling on objections to PACA claims.

## II.     Trent Bishop Produce Services, LLC and F&B Holdings LLC

Claimant Trent Bishop Produce Services, LLC ("Trent Bishop") filed its complaint in intervention on February 3, 2009. Claimant F&B Holdings LLC ("F&B") filed its complaint in

intervention on April 2, 2009.  Objections to the PACA trust claims of Trent Bishop and F&B were filed by Sunkist Growers, Inc. ("Sunkist Growers"); Eagle Eye Distributing, Inc., Chiquita Fresh North America, Harvest Standard, McCormick & Milne, Texas Sweet Potato Distributing, Inc., and United Distributors, Inc. (the "Eagle Eye Group"); Defendants Ben Parker, Inc. ("BPI"), David Parker, and Susan Parker (collectively, "Defendants"); and the Fowler Packing Group.

Some of these objections have been resolved or withdrawn; accordingly, the court considers only the remaining objections.  The court **grants** Motion of Trent Bishop Produce Services, LLC and F&B Holdings to Rule on Defendants' Objections to PACA Trust Claims and now considers the contested objections to Trent Bishop and F&B's PACA claims.

### A.    Eagle Eye Group

The Eagle Eye Group raises two objections to the claims of Trent Bishop and F&B.  Its first objection is that these claimants failed to timely file a PACA Proof of Claim including supporting documents as required by the PACA Claims Order.  It contends that these claims are therefore barred pursuant to paragraph 28 of the PACA Claims Order.  The Eagle Eye Group's second objection is that these claimants failed to preserve their PACA trust rights because they did not include statutorily prescribed language on its ordinary and usual billing statements or invoices, or give BPI separate timely written notice of intent to preserve trust benefits containing information prescribed by regulation.

The PACA Claims Order required that potential claimants file complaints in intervention and PACA Proofs of Claim no later than April 17, 2009:

> On or before [April 17, 2009], each unpaid supplier of Produce to Ben Parker or other claimant alleging rights under the PACA Trust, shall file with the Clerk of the Court for this District and serve a completed Declaration and PACA Proof of Claim

("PACA Proof of Claim"), in a form substantially similar to that attached hereto . . ., and any and all documents supporting its claim, together with a Complaint in Intervention or First Amended Complaint, if part of a plaintiff group, complying with Federal Rule of Civil Procedure 8(a) on [counsel]. . . .  Any documents not timely filed with the Proof of Claim in accordance with this Paragraph shall be inadmissible at any evidentiary proceeding or trial conducted in this proceeding.  This requirement does not apply to documents relied upon by a PACA claimant to rebut an objection to its claim.

PACA Claims Order (Feb. 17, 2009) 11-12, ¶ 25.  Failure to comply with these procedures bars a

claimant from bringing its claims:

> Any Produce supplier who fails to timely file such Complaint in Intervention and a PACA Proof of Claim with the Court and serve the counsel and parties identified in ¶ 25, *supra*, shall be forever barred from thereafter asserting any claim against Ben Parker, its officers, directors, shareholders, or employees, under PACA or for non-payment of produce sold, whether in this Court or any other forum.  Each PACA Proof of Claim must be verified by either an owner, an officer, or authorized corporate employee of the claimant having personal knowledge of the facts comprising such claims.

*Id.* at 12, ¶ 28.

The Eagle Eye Group contends that claimants Trent Bishop and F&B did not comply with

the PACA Claims Order and therefore their claims are barred pursuant to paragraph 28.  It also

objects to these claimants' failure to comply with the requirements of the PACA statute.

Trent Bishop filed its First Amended Complaint in Intervention on February 3, 2009.  It

attached as an exhibit a sample invoice sent to BPI that includes the language required by PACA:

> The perishable agricultural commodities listed in this invoice are sold subject to the statutory trust authorized by section 5c of the Perishable Agricultural Commodities Act, 1930 7 U.S.C. 499e(c).  The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

First Am. Compl. in Intervention (Feb. 3, 2009) Ex. A.  Trent Bishop filed its PACA Proof of Claim

on April 1, 2009, and attached a statement of account listing amounts due from BPI totaling

$563,159.50.  The statement of account does not include the statutory PACA language, but the

declaration states that it "preserved its PACA trust interest against Ben Parker by . . . including

statutorily required language on Claimant's invoice or other billing statement."  Decl. of Trent

Bishop (Apr. 1, 2009) 2, ¶ 5.  Trent Bishop included all the invoices, which contain the PACA trust

language, with its response to objections and with the instant motion.

F&B filed its Complaint in Intervention on April 2, 2009.  It included its PACA Proof of

Claim as an exhibit to the complaint, which states that F&B "preserved its PACA trust interest

against Ben Parker by . . . including statutorily required language on Claimant's invoice or other

billing statement."  Decl. of Trent Bishop (Apr. 2, 2009) 2, ¶ 5.  F&B also attached a detailed aging

report showing that BPI owed it $195,617.  F&B filed its invoices, which include the statutorily-

required language, with its response to objections and with the instant motion.

The court determines that both Trent Bishop and F&B have complied with the PACA Claims

Order.  Their PACA Proofs of Claim were filed timely, and they have submitted evidence in

response to the objections substantiating their claims that their invoices included the PACA statutory

language to preserve their rights.  Accordingly, the court **overrules** the Eagle Eye Group's

objections to Trent Bishop and F&B's PACA claims.

### B.    Fowler Packing Group

The Fowler Packing Group also objects to certain of Trent Bishop and F&B's claims.  The

Fowler Packing Group is comprised of intervenors Fowler Packing Co., Inc., Index Fresh, Inc.,

Valley Produce, LLC, Pro Citrus Network, Inc., Foodsource Procurement, LLC, Five Crowns, Inc.

d/b/a Five Crowns Marketing, JDB Pro, Inc. d/b/a Central West Produce, Dynasty Farms, Inc., Cal. Packing and Storage L.P. d/b/a Bravante Produce, Peter Rabbit Farms, Inc., High Gate Imports, Inc., Sunrise Growers, Inc, and David Oppenheimer and Company I, LLC.  The Fowler Packing Group raises three objections to Trent Bishop and F&B's claims:  (1) they failed to file and serve a timely complaint in intervention as required by the PACA Claims Order; (2) they failed to file and serve a timely PACA Proof of Claim as required by the PACA Claims Order; and (3) they have failed to attach any writing establishing a statutory right to attorney's fees on their contract claims by presenting the claim pursuant to section 38.002 of the Texas Civil Practice and Remedies Code.

The court **overrules** the Fowler Packing Group's objections regarding Trent Bishop and F&B's failure to timely file their complaints in intervention and PACA Proofs of Claim.  The court has determined that they filed these documents within the deadlines set forth in the PACA Claims Order.

Both Trent Bishop and F&B assert claims for breach of contract.  Section 38.002 of the Texas Civil Practice and Remedies Code provides:

> To recover attorney's fees under this chapter:
>
> (1)     the claimant must be represented by an attorney;
> (2)     the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party; and
> (3)     payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented.

Tex. Civ. Prac. & Rem. Code § 38.002.  Trent Bishop and F&B point to an e-mail message sent by Mr. Trent Bishop, the principal for both companies, to Mr. Bennie Parker on December 16, 2008. They contend that this e-mail message satisfies the presentment requirement.

**Memorandum Opinion and Order – Page 6**

There is no dispute that Trent Bishop and F&B are represented by an attorney or that payment has not been made; the parties disagree whether this e-mail message satisfies the statutory presentment requirement. "No particular form of presentment is required; all that is necessary is that an assertion of a debt or claim and a request for compliance be made to the opposing party, and that failure of that party to render performance. The statute is to be liberally construed." *Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 719 (Tex. App.– Houston [1st Dist.] 1988, writ denied) (citations omitted).

The court determines that, liberally construed, the e-mail is a request for payment and satisfies the presentment requirement. Accordingly, the court determines that Trent Bishop and F&B have complied with section 38.002 and are entitled to seek their attorney's fees for their breach of contract claims. This conclusion, however, does not mean that Trent Bishop and F&B are entitled to recover their attorney's fees from the PACA Trust. There is no evidence that the contracts for the sale of perishable goods between BPI and Trent Bishop and F&B contained a clause relating to attorney's fees. In this circuit, one district court held that although PACA claims for attorney's fees based upon a specific contract provision are recoverable from a PACA trust, those attorney's fees claims made pursuant to section 38.001 are not. *Ruby Robinson Co. v. Kalil Fresh Marketing, Inc.*, 2009 WL 3378419, *3 (S.D. Tex. Oct. 15, 2009). That court noted:

> Contractually negotiated attorneys' fees are part of a [PACA] claimant's claim and are "sums owing in connection with" a PACA-covered transaction. Fees awarded under the Texas Civil Practice and Remedies Code are not. Rather, they are awarded pursuant to state law in connection with a lawsuit, not in connection with the transaction. The claimants in this case seek an award from a trust fund created under federal law. While claimants may have valid state-law causes of action for breach of contract, a claim to PACA funds must be made through PACA, which does not allow for attorney's fees as such.

**Memorandum Opinion and Order – Page 7**

*Id.* This result is consistent with the legislative history and purposes behind the statute even if some suppliers have a PACA claim for attorney's fees while others do not. The Ninth Circuit considered this possible inequity and rejected it as a basis to allow non-contractual attorney's fees as PACA claims: "PACA protects all that is due and owing in connection with the perishable agricultural commodity transaction. If one particular supplier . . . gained a contractual right greater than that negotiated by others, then it is not unfair for such a supplier to gain the benefit of its superior foresight or industry." *Middle Mountain Land and Produce, Inc. v. Sound Commodities, Inc.*, 307 F.3d 1220, 1224 (9th Cir. 2002). The court has reviewed the invoices submitted by Trent Bishop and F&B and determines that there is no contract term allowing for the recovery of attorney's fees. Because there is no contract provision for such fees "in connection with" the PACA transactions, the court determines that Trent Bishop and F&B are not entitled to recover non-contractual attorney's fees from the PACA trust and **sustains** the Fowler Packing Group's third objection to Trent Bishop and F&B's claims.

### C.    Defendants

Although Defendants originally objected to claims made by both Trent Bishop and F&B, they have withdrawn several of these objections. Their remaining objection is to F&B's entire claim because they contend that F&B extended payment terms to BPI beyond thirty days. In support of their objection, they point to the same e-mail message to Mr. Bennie Parker from Mr. Trent Bishop that states: "Your pay practices have gotten very bad. I basically do not get paid any more unless I beg for money. When we first started, I was getting paid in 30 days."

Both Defendants and F&B cite *Bocchi Americas Assocs., Inc. v. Commerce Fresh Mktg., Inc.*, 515 F.3d 383 (5th Cir. 2008), in support of their position. In that case, the court noted:

> PACA applies only to produce sold on a short-term credit basis, in accordance with the statute's "full payment promptly" provision. "Full payment promptly" means payment within ten days after the buyer accepts the produce. However, a buyer and seller may agree to extend the time for payment, as long as the aggregate time for payment does not exceed thirty days after the buyer receives and accepts the commodities. Therefore, if a seller of produce agrees to extend the time for payment more than thirty days following delivery and acceptance of the produce, the seller may no longer assert any right to a PACA trust or seek recovery from a principal of the buyer.

*Id.* at 388 (citations omitted). "[W]aiver or forfeiture of PACA trust rights by entering into an extension agreement requires an agreement in writing," though the written agreement may be informal. *Id.* at 390-91 (footnote omitted).

The court has reviewed the e-mail message and determines that it is not an agreement to extend Defendants' time for payment that would waive F&B's PACA rights. The e-mail message does state that F&B accepted payment up to thirty days, but the court construes the communication as a request for timely payment, not an agreement to extend Defendants' time to make payment. Accordingly, the court determines that this e-mail is not a written agreement that waives F&B's PACA rights. It therefore **overrules** Defendants' objection to F&B's claims.

### D.    Motion to Amend Declarations

Trent Bishop and F&B have also moved to amend their declarations to include claims for prejudgment interest at the rate of 6% per annum. The motion states that this interest was omitted with these claimants' original declarations. Defendants and Premier Produce Services, LLC filed opposition to this request. They argue that Trent Bishop and F&B have failed to show excusable neglect for their failure to include prejudgment interest in their original declarations.

The court has reviewed the motion and responses and determines that Trent Bishop and F&B have failed to provide any explanation for their failure to include prejudgment interest with their

original PACA Proofs of Claim.  Several months elapsed between their original filings and their motion, and no explanation for the delay has been provided.  Moreover, the court has ordered the first interim distribution of the PACA trust claims, and allowing Trent Bishop and F&B to now amend their declarations to increase their claim amounts would result in changes to the Amended PACA Trust Chart, which the court relied upon in ordering the interim distribution.  The PACA Claims Order makes clear that all unasserted claims are waived:  claimants who fail to timely file their complaint in intervention and PACA Proof of Claim "shall be forever barred from thereafter asserting any claim against Ben Parker, its officers, directors, shareholders, or employees, under PACA or for non-payment of Produce sold, whether in this Court or any other forum."  PACA Claims Order 12, ¶ 28.  The court determines that Trent Bishop and F&B's claims for prejudgment interest are barred due to their failure to timely assert them.  Since no explanation for the delay has been given and allowing amendment at this late date would cause prejudice to other parties, the court **denies** Trent Bishop and F&B's motion to amend their declarations to add claims for prejudgment interest.

## III.    Rio Vista Group

The Rio Vista Group is comprised of intervenors Rio Vista Limited d/b/a Guimarra Companies, Sun Pacific Marketing Cooperative, Inc., Frio County Partners, Inc. d/b/a Jack's Produce, Henry Avocado Corporation, Fresh Logistics, LLC, David Petrocco Farms, Inc., Church Brothers, LLC, Naturipe Farms, LLC, and McBryde Produce, Inc.  The Rio Vista Group has moved for the court to rule on objections to its claims made by Defendants and intervenor Premier Produce Services, LLC ("Premier Produce").  Several of the objections have now been withdrawn, and the court considers the objections raised as to each member of the Rio Vista Group.  Accordingly, the

court **grants** The Rio Vista Group's Motion to Rule on Objections and considers each of the objections to the claims of members of the Rio Vista Group.

### A.     Church Brothers, LLC

Premier Produce objects to Church Brothers, LLC's ("Church Brothers") claim for attorney's fees and for prejudgment interest.  Specifically, Premier Produce argues that PACA does not provide for recovery of accrued interest on past due amounts or attorney's fees incurred in an effort to collect such amounts.

Church Brothers responds that several circuits have held that attorney's fees and prejudgment interest are recoverable from a PACA trust if provided for by contract.  It contends that the Second, Ninth, and Eleventh Circuits have relied upon the language in 7 U.S.C. § 499e(c)(2) to allow a PACA claimant to recover attorney's fees and prejudgment interest.  *Cooseman Specialities, Inc. v. Gargiulo*, 485 F.3d 701, 709 (2d Cir. 2007); *Country Best v. Christopher Ranch, LLC*, 361 F.3d 629, 632 (11th Cir. 2004); *Middle Mountain*, 307 F.3d at 1224-26.  It further argues that prejudgment interest at the rate of 18% is appropriate because its contract with Defendants called for 1.5% interest per month and Texas law has recognized the reasonableness of a contractual prejudgment interest rate at 18%.

Section 499e(c)(2) provides:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the *sums owing in connection with such transactions* has been received by such unpaid suppliers, sellers, or agents.

**Memorandum Opinion and Order – Page 11**

7 U.S.C. § 499e(c)(2) (emphasis added).  Although the Fifth Circuit has not considered this issue, at least one district court in this circuit has followed other circuits and construed section 499e(c)(2) to allow for payment of attorney's fees from a PACA Trust.  *Ruby Robinson*, 2009 WL 3378419 at *2 (noting that "[s]ince every Circuit to directly address the issue presented here has awarded attorneys' fees, the court will do so here as well.").  The court has reviewed the statute and the decisions from other circuits and agrees that contractual claims for attorney's fees and prejudgment interest[1] are allowed as PACA claims pursuant to section 499e(c)(2).  Accordingly, the court **overrules** Premier Produce's remaining objections to Church Brother's claims.

### B.   David Petrocco Farms, Inc.

The court next considers Premier Produce's objection to intervenor David Petrocco Farms, Inc.'s ("David Petrocco") claim for prejudgment interest.  David Petrocco seeks prejudgment interest at the rate of 6% despite not having a contractual term for prejudgment interest.

Premier Produce argues that the statute does not allow for the recovery of interest on past due amounts and that David Petrocco has failed to provide any contractual basis for its interest claim. David Petrocco responds that many courts have found that courts have discretion to award prejudgment interest for PACA claims to promote the purpose of the statute and its underlying

---

[1]The court does not believe that this conclusion conflicts with its decision to deny intervenors Trent Bishop and F&B leave to amend their claims to add a request for prejudgment interest.  Church Brothers has sought prejudgment interest since it first filed its PACA Proof of Claim, and it also has a contractual right to such interest.  Trent Bishop and F&B failed to include a request for prejudgment interest in their complaints in intervention and their declarations in support of their PACA claims, and they did not oppose the initial distribution from the PACA Trust.  Trent Bishop and F&B could have opposed the motion to make the initial distribution or asked the court to rule first on their motion for leave to amend, but they did neither.  If the court were to allow them to amend their declarations at this point in the litigation, their percentage of PACA Trust funds due would increase and would probably result in a finding that other claimants have been overpaid.  Accordingly, the court determined that Trent Bishop and F&B failed to timely assert their claim for prejudgment interest and are therefore barred from bringing it at this stage in the litigation.

Memorandum Opinion and Order – Page 12

principles.  It argues that the court should award it prejudgment interest at the current interest rate under Texas law, 6% per annum.

The court has reviewed the authorities cited by the parties and determines that although the Fifth Circuit has not explicitly so held, the decision whether to award prejudgment interest to PACA claimants is within its discretion:  "[A] district court may award reasonable prejudgment interest to PACA claimants if such an award is necessary to protect the interests of PACA claimants, and that such an award absent contract is discretionary."  *Middle Mountain*, 307 F.3d at 1226; *see also Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1071-72 (2d Cir. 1995).  The court finds that awarding prejudgment interest to those PACA claimants that included a request with their PACA Proofs of Claim is warranted because it furthers the purposes of the statute and provides an incentive for prompt payment to suppliers.[2]  The court determines, within its discretion, that an award of prejudgment interest to a PACA claimant that filed a PACA claim for such interest, even without a contractual basis, is entitled to such interest.  Accordingly, the court **overrules** Premier Produce's objection to David Petrocco's PACA claim for prejudgment interest.

### C.      Fresh Logistics, LLC

The court next consider Premier Produce's objections to the PACA claims of Fresh Logistics, LLC ("Fresh Logistics").  Premier Produce specifically objects to Fresh Logistic's claims for attorney's fees and prejudgment interest at the rate of 18%.

The court has reviewed Fresh Logistic's invoices and finds that its contract with BPI included terms for both attorney's fees and prejudgment interest at the rate of 1.5% per month, or

---

[2]The court, however, will not award prejudgment interest to those PACA claimants that failed to include a request for such prejudgment interest in their PACA Proofs of Claim because their claim is barred pursuant to the PACA Claims Order.

**Memorandum Opinion and Order – Page 13**

18% per annum.  For the reasons set forth above, the court determines that Premier Produce's objections to Fresh Logistic's PACA claims for attorney's fees and prejudgment interest at the rate of 18% per annum are **overruled**.

### D.      Henry Avocado Corporation

The court next considers Premier Produce's objections to the PACA claims of Henry Avocado Corporation ("Henry Avocado").  Premier Produce specifically objects to Henry Avocado's claims for attorney's fees and prejudgment interest at the rate of 18%.

The court has reviewed Henry Avocado's invoices and finds that its contract with BPI included terms for both attorney's fees and prejudgment interest at the rate of 1.5% per month, or 18% per annum.  For the reasons set forth above, the court determines that Premier Produce's objections to Henry Avocado's PACA claims for attorney's fees and prejudgment interest at the rate of 18% per annum are **overruled**.

### E.      Frio County Partners, Inc. d/b/a Jack's Produce

Premier Produce objects to Frio County Partners, Inc. d/b/a Jack's Produce's ("Jack's Produce") PACA claim for prejudgment interest in the amount of 6% per annum.  For the reasons set forth above, although Jack's Produce did not have a contractual term allowing for prejudgment interest, the court will award it prejudgment interest in its discretion.  Jack's Produce has sought prejudgment interest since it timely filed its PACA Proof of Claim.  The court **overrules** this objection.

Defendants also object to $2,430 of Jack's Produce's principal claim.  They contend that it owes BPI a credit of $210 for invoice 891508 and a credit of $2,220 for invoice 891064.  In support, Defendants have filed the affidavit of Cari Smith, who attaches invoices from Jack's Produce with

handwritten notes by Bennie Parker as well as a bill of lading with a signature on behalf of Jack's Produce stating that 600 cartons of cabbage were refused. Ms. Smith states that the Quickbooks records for BPI are consistent with the credits asserted by Defendants. The court has reviewed the evidence and determines that Defendants have shown that BPI is entitled to credits in the amount of $2,430 for the PACA claims of Jack's Produce. The court therefore **sustains** this objection.

### F.    McBryde Produce, LLC

Premier Produce objects to McBryde Produce, LLC's ("McBryde Produce") PACA claim for prejudgment interest in the amount of 6% per annum. For the reasons set forth above, although McBryde's Produce did not have a contractual term allowing for prejudgment interest, the court will award it prejudgment interest in its discretion. McBryde's Produce has sought prejudgment interest since it timely filed its PACA Proof of Claim. The court **overrules** this objection.

### G.    Naturipe Farms, LLC

The court next considers Premier Produce's objections to the PACA claims of Naturipe Farms ("Naturipe"). Premier Produce specifically objects to Henry Avocado's claims for attorney's fees and prejudgment interest at the rate of 18%.

The court has reviewed Naturipe's invoices and finds that its contract with BPI included terms for both attorney's fees and prejudgment interest at the rate of 1.5% per month, or 18% per annum. For the reasons set forth above, the court determines that Premier Produce's objections to Naturipe's PACA claims for attorney's fees and prejudgment interest at the rate of 18% per annum are **overruled**.

## H.      Rio Vista Limited

The court next considers Premier Produce's objections to the PACA claims of Rio Vista Limited ("Rio Vista"). Premier Produce specifically objects to Rio Vista's claims for attorney's fees and prejudgment interest at the rate of 18%.

The court has reviewed Rio Vista's invoices and finds that its contract with BPI included terms for both attorney's fees and prejudgment interest at the rate of 1.5% per month, or 18% per annum. For the reasons set forth above, the court determines that Premier Produce's objections to Rio Vista's PACA claims for attorney's fees and prejudgment interest at the rate of 18% per annum are **overruled**.

Defendant also objects to $13,408.50 of Rio Vista's principal claim amount and states that certain amounts should be deducted from three invoices. In support of their objection, Defendants have filed the Smith affidavit and attached invoices from Rio Vista and from BPI to Affiliated Foods. Ms. Smith states that the Quickbooks records for BPI are consistent with the credits asserted by Defendants. The court has reviewed the evidence and determines that Defendants have shown that BPI is entitled to credits in the amount of $13,408.50 for the PACA claims of Rio Vista. The court therefore **sustains** this objection.

## I.      Sun Pacific Marketing Cooperative, Inc.

Premier Produce objects to Sun Pacific Marketing Cooperative, Inc.'s ("Sun Pacific") PACA claims for attorney's fees and prejudgment interest at the rate of 6%. Sun Pacific's invoices include a term regarding attorney's fees, but they do not include any contractual basis for prejudgment interest. The court determines that Sun Pacific is entitled to its claim for attorney's fees as a term

of its contract with BPI and to prejudgment interest at the rate of 6% per annum.  Accordingly, this objection is **overruled**.

Defendants also object to Sun Pacific's claim for principal and contend that BPI paid Sun Pacific a check in the amount of $11,624.58 and that $1,309.75 should be deducted from invoice 0847366-A.  In support of this objection, Defendants have provided the Smith affidavit.  The evidence attached to the Smith affidavit reflects a credit of $1,309.75, but there is no evidence of a check for $11,624.58.  Accordingly, the court **sustains in part** and **overrules in part** this objection; it determines that BPI should be credited $1,309.75, but that there is no evidence supporting Defendants' objection that $11,624.58 was paid to Sun Pacific.

## IV.    Eagle Eye Group

The Eagle Eye Group includes Plaintiff Eagle Eye Distributing, Inc. and intervenors Chiquita Fresh North America, LLC, Harvest Standard LLC d/b/a Harvest Select, McCormick & Milne, LLC, Texas Sweet Potato Distributing, Inc., and United Distributors, Inc.  Objections to the PACA claims made by the members of the Eagle Eye Group were made by the Fowler Group, the Rio Vista Group, Sunkist, Premier Produce, and Defendants.  The parties resolved many of these objections, and now the court considers only the remaining objections.

### A.    Eagle Eye

The Fowler Group, the Rio Vista Group, and Defendants object to the entire claim of Eagle Eye Distributing Inc. ("Eagle Eye") because they contend it waived its PACA rights by extending payment terms beyond thirty days.  These objections are based upon a January 13, 2009 e-mail message from Jake Jacobsen of Eagle Eye to Bennie Parker.  This e-mail states:  "BEN WE NEED TO GET THIS CAUGHT UP . . . I'M BEING BUT [sic] ON A TIME LINE TO GET THIS BACK

TO 45 DAYS . . ." (original capital letters and ellipses).  Eagle Eye argues that this e-mail is not

sufficient to waive its PACA trust rights because it did not enter into a written post-default payment

agreement.  It argues that the e-mail simply shows that Jacobsen was being pressured to collect

payment from BPI and that it is not a contractual agreement.  It further argues that Jacobsen did not

have authority to enter into a payment agreement with BPI and that Bennie Parker never responded

to the e-mail message.

The court has reviewed the objections and Eagle Eye's response to the objections, and it

determines that the e-mail message is not a writing that waives Eagle Eye's PACA trust rights.

Although under *Bocchi*, the agreement need not be a formal written agreement, it must still be a

contract that satisfies the Texas statute of frauds.  515 F.3d at 391.  The court determines that this

single e-mail does not show any agreement between Eagle Eye and BPI and is, at most, an attempt

to collect payment from BPI.  Because this e-mail does not waive Eagle Eye's PACA rights, the

court **overrules** this objection.

Defendants also object to Eagle Eye's PACA claim and contend that it failed to properly

credit BPI for payments or rejected shipments.  Specifically, Defendants contend that Eagle Eye

failed to credit it $21,434.13 for eleven invoices.  In response to Eagle Eye's motion, Defendants

have provided the Smith affidavit, with attached invoices from Eagle Eye with handwritten notes

by Bennie Parker.  Ms. Smith states that the Quickbooks records for BPI are consistent with the

credits asserted by Defendants.  The court has reviewed the evidence and determines that Defendants

have shown that BPI is entitled to credits in the amount of $21,434,13 for the PACA claims of Eagle

Eye.  The court therefore **sustains** this objection.

Finally, Defendants contend that Eagle Eye's PACA claims should be barred because it engaged in inequitable conduct. Specifically, they argue that Eagle Eye's communications with Affiliated Foods interfered with BPI's ability to collect money from Affiliated Foods. On this basis, Defendants object to Eagle Eye's entire claim. Defendants attach a January 14, 2009 e-mail message from Newman Giles of Eagle Eye to Harold Callaway of Affiliated Foods. They contend that, based upon this communication, Affiliated Foods stopped making payment to BPI and stopped payment on checks sent to BPI. Eagle Eye contends that there was no improper interference but that the e-mail was simply informing Affiliated Foods that Eagle Eye had not been paid for produce sold to BPI and delivered to Affiliated Foods.

The court has reviewed the e-mail and considered Defendants' objection. Defendant cites no authority to support its contention that, even if there was interference, Eagle Eye's entire PACA claim should be denied. Moreover, the court determines that there is no evidence that Affiliated stopped paying BPI or stopped payment on checks sent to BPI. Accordingly, the court **overrules** this objection.

### B.      Harvest Select

Defendants object to the PACA claim of Harvest Standard, LLC d/b/a Harvest Select ("Harvest Select") and contend that it failed to properly credit BPI for $339.90 on invoice 26262. Harvest Select responds that Defendants failed to provide any proof of this credit. In response, Defendants have provided the Smith affidavit, with an attached invoice from Harvest Select with handwritten notes by Bennie Parker. Ms. Smith states that the Quickbooks records for BPI are consistent with the credits asserted by Defendants. The court has reviewed the evidence and

determines that Defendants have shown that BPI is entitled to a credits in the amount of $339.90 for the PACA claims of Harvest Select.  The court therefore **sustains** this objection.

### C.      McCormick

Defendants originally objected to the PACA claim of McCormick & Milne, LLC ("McCormick") and argued that it failed to properly credit BPI $32,155.01 for unauthorized shipments relating to invoices 21958 through 21963. On August 26, 2009, the court ordered that McCormick was authorized to receive $32,155.01 from Affiliated Foods and that McCormick could then reduce its PACA claim by this amount.  Accordingly, the court **overrules as moot** this objection.

### D.      United

Defendants object to the PACA claim of United Distributors, Inc. ("United") and contend that it failed to properly credit BPI $8,271.60, which includes credits for three invoices.  United responds that Defendants failed to provide any proof of this credit.  In response, Defendants have provided the Smith affidavit, with the three disputed invoices from United with handwritten notes by Bennie Parker.  Ms. Smith states that the Quickbooks records for BPI are consistent with the credits asserted by Defendants.  The court has reviewed the evidence and determines that Defendants have shown that BPI is entitled to a credit in the amount of $8,271.60 for the PACA claims of United.  The court therefore **sustains** this objection.

## V.      Griffin-Holder

Intervenor Griffin-Holder Co. ("Griffin-Holder") moves with respect to objections made to its PACA claims by Defendants and other parties.  Griffin-Holder does not specifically state which objections were made by which parties, and in its motion it does not state that any objections had

been withdrawn.  The court has carefully reviewed the objections filed by the parties and the docket sheet, and determines that only two objections remain.  First, Defendants object to Griffin-Holder's principal amount and contend hat BPI is owed a credit of $1,850 from Griffin-Holder.  Second, the Fowler Packing Group objects to Griffin-Holder's claim for attorney's fees because its contracts did not include a provision for such fees and because it has failed to attach a writing establishing a statutory right to attorney's fees.[3]

Defendants object to Griffin-Holder's principal amount and contend that it failed to credit BPI $1,850 relating to four invoices.  Griffin-Holder responds that Defendants failed to provide any proof of this credit.  In response, Defendants have provided the Smith affidavit, with attached invoices from Griffin-Holder with handwritten notes by Bennie Parker.  Ms. Smith states that the Quickbooks records for BPI are consistent with the credits asserted by Defendants.  The court has reviewed the evidence and determines that Defendants have shown that BPI is entitled to a credits in the amount of $1,850 for the PACA claims of Griffin-Holder.  The court therefore **sustains** this objection.

With respect to the Fowler Packing Group's objection, Griffin-Holder states that it is entitled to attorney's fees pursuant to section 38.001 of the Texas Civil Practice and Remedies Code.  It contends that its claims are based in part on breach of contract claims and that it has satisfied the presentment requirements.  Griffin-Holder does not contend that its contract with BPI included a provision for attorney's fees, and its invoices do not include such a term.  For the reasons set forth above, the court determines that a claim for attorney's fees that is not a contractual term cannot be

---

[3]Griffin-Holder also includes in its motion objections relating to its claim for prejudgment interest at the rate of 6% per annum.  The only party that objected on this basis was Sunkist, and that entity withdrew all of its objections.  Accordingly, the court does not rule on this withdrawn objection.

recovered from the PACA trust.  Accordingly, the court **sustains** the objection that Griffin-Holder is not entitled to recover its attorney's fees from the PACA Trust.  Because the court sustains both remaining objections, the court **denies** Griffin Holder Co.'s Motion for Order Overruling Objections to, and Validating its PACA Trust Claims.

## VI.    Fowler Packing Group

Finally, the court considers the objections to the PACA claims of the members of the Fowling Packing Group made by Defendants, Premier Produce, and the Eagle Eye Group.  The court addresses the remaining objections.

### A.    Attorney's Fees and Prejudgment Interest

Premier Produce and Defendants make various objections to the claims for interest and attorney's fees made by Fowler Packing, Co. ("Fowler Packing"), Index Fresh, Inc. ("Index Fresh"), Valley Produce, LLC ("Valley Produce"), Pro Citrus Network, Inc. ("Pro Citrus"), Foodsource Procurement, LLC ("Foodsource"),  Five Crowns, Inc. d/b/a Five Crowns Marketing ("Five Crowns"), JDB Pro, Inc. d/b/a Central West Produce ("JDB"), Dynasty Farms, Inc. ("Dynasty"), Cal. Packing and Storage, L.P. d/b/a Bravante Produce ("Cal Packing"), Peter Rabbit Farms, Inc. ("Peter Rabbit"), High Gate Imports, Inc. ("High Gate"), Sunrise Growers, Inc. ("Sunrise"), and David Oppenheimer and Company I, LLC ("Oppenheimer").  Not every member of the Fowler Packing Group seeks recovery of both interest and attorney's fees, but each member seeks interest at the rate of at least 10% per annum, while some members seek interest at the rate of 18% per annum.

The Fowler Packing Group argues that certain of its members are entitled to recover attorney's fees because they were a term of their contracts with BPI and that the other members are

entitled to recover pursuant to section 38.001 of the Texas Civil Practice and Remedies Code.  With respect to interest, it argues that those members that had a contractual provision regarding interest are entitled to recover interest at that rate.  As to those members that did not have a contractual provision regarding interest, it concedes that those members may only recover interest at the rate of 6% per annum.

The court has already set forth its analysis of PACA claimant's rights to attorney's fees and prejudgment interest.  For the reasons already stated herein, the court determines that  the following members of the Fowler Packing Group are entitled to recover prejudgment interest at the rate of 18% per annum based on their contracts with BPI:  JDB, Dynasty, Peter Rabbit, and Sunrise.  The other members of the Fowler Packing Group are entitled to recover prejudgment interest at the rate of 6% per annum.  The following members are entitled to recover their attorney's fees based on their contracts with BPI:  Fowler Packing, Index Fresh, JDB, Dynasty, Cal Packing, Peter Rabbit, and Sunrise.  The other members of the Fowler Packing Group are not entitled to receive attorney's fees from the PACA Trust based upon the Texas Civil Practice and Remedies Code.  Accordingly, the court **sustains in part** and **overrules in part** these objections.

### B.    Waiver of PACA Rights

Defendants and Premier Produce have also objected that certain members of the Fowler Packing Group waived their PACA rights by extending payment terms beyond thirty days.  Specifically, these objections are to the PACA claims of Five Crowns, Index Fresh, High Gate, and Cal Packing.  The court examines each claimant in turn.

### 1.      Five Crowns

Defendants argue that Five Crowns extended payment terms beyond thirty days.  In support of their objection, they attach an e-mail message from Daren Van Dyke to Bennie Parker.  Five Crowns argue that this e-mail is not a written agreement waiving its PACA rights.  The court determines that the e-mail message is not a written agreement waiving PACA rights pursuant to *Bocchi*.  The e-mail is a request for payment, but it is not evidence of any agreement to extend the payment deadline beyond thirty days.  Accordingly, the court **overrules** this objection to Five Crowns's PACA claim.

### 2.      Index Fresh

Defendants also object to Index Fresh's PACA claim based upon an e-mail they contend waives its PACA rights.  In support of this objection, they attach several e-mails from Index Fresh to BPI seeking payment on certain invoices.  The court determines that these e-mails are not written agreements extending the payment dates under *Bocchi*.  These e-mails are attempts to collect past due invoices and are not evidence of an agreement to extend BPI's deadlines to pay.  Accordingly, the court **overrules** this objection to Index Fresh's PACA claim.

### 3.      High Gate

Defendants withdrew their objection to High Gate's PACA claim; however, Premier Produce joined Defendants' objection and also argued that its payment terms were "Net 21 days" and therefore failed to comply with PACA.  In response, High Gate argues that there was no written agreement between the parties before the invoices and therefore the terms remained at ten days as required by PACA.  It points to its PACA Proof of Claim that states that the payment terms were ten days. The court has reviewed the parties' arguments, invoices, and applicable law.  The invoices

clearly include the PACA statutory language, there is no evidence of a pre-transaction agreement regarding terms, and even if the invoices were a written agreement extending the payment deadline to twenty-one days, it would not waive High Gate's PACA rights.  *Bocchi*, 515 F.3d at 389-90. Accordingly, the court **overrules** this objection to High Gate's PACA claim.

### 4.      Cal Packing

Finally, Defendants and Premier Produce object to the PACA claim of Cal Packing, arguing that its invoices provide for payment terms of thirty days, waiving Cal Packing's PACA rights.  For the reasons set forth above regarding High Gate's claim, the court determines that Cal Packing did not waive its PACA rights.  There is no evidence of a pre-transaction written agreement and even if the invoices are a written agreement extending the payment date, it does not extend it beyond thirty days.  Accordingly, the court **overrules** this objection to Cal Packing's PACA claim.

### C.      Objections to Principal Amounts

Finally, the court considers objections to the PACA claims of Index Fresh, Valley Produce Dynasty Farms, Five Crowns, and JDB for the amount of their principal PACA claims.  These objections are made by Defendants, Premier Produce, and Eagle Eye Group.  As set forth in the Fowler Packing Group's motion, the objections relating to Valley Produce, Dynasty Farms, Five Crowns, and JDB have been agreed upon or waived.  Accordingly, the court only considers the objections relating to Index Fresh.

Defendants and the Eagle Eye Group object to Index Fresh's PACA claim.  Defendants contend that it failed to properly credit BPI in the amount of $8,877 for two invoices.  Index Fresh responds that there is no evidence submitted to substantiate this claim. The Eagle Eye Group objects

to Index Fresh's claim, alleging a setoff of $2,850 is due to BPI.  Index Fresh has submitted the affidavit of Merrill Causey to rebut this contention.

The court has reviewed the parties' arguments and evidence.  Defendants have provided the Smith affidavit, with attached invoices from Index Fresh with handwritten notes by Bennie Parker.  Ms. Smith states that the Quickbooks records for BPI are consistent with the credits asserted by Defendants.  Index Fresh has provided the Causey affidavit, with supporting documentation.  Causey states that the Index Fresh PACA claim is correct and that Bennie Parker's notes show price discrepancies with its records and include some of his own losses.   The court has reviewed the evidence and determines that Index Fresh has substantiated its PACA claim and therefore its principal amount in its PACA Proof of Claim is correct.  Accordingly, BPI is not owed a credit, and the Eagle Eye Group is not entitled to any setoff.  Accordingly, the court therefore **overrules** these objections.

## VII.    Conclusion

For the reasons stated herein, the court **grants** Motion of Trent Bishop Produce Services, LLC and F&B Holdings to Rule on Defendants' Objections to PACA Trust Claims; **grants** The Rio Vista Group's Motion to Rule on Objections; **grants** Motion to Rule on Objections to PACA Trust Claims of Plaintiff and Certain Intervening Plaintiffs; **denies** Griffin Holder Co.'s Motion for Order Overruling Objections to, and Validating its PACA Trust Claims; **grants** The Fowler Packing Group's Omnibus Motion to Rule on the Various Objections Filed to the PACA Trust Claims of the Fowler Group.  The court **sustains in part** and **overrules in part** the objections set forth in these motions as set forth in this memorandum opinion and order.  The court **denies** Opposed Motion for Leave to Amend Declarations of Trent Bishop Produce Services, LLC and F&B Holdings LLC.

Pursuant to ¶ 31 of the PACA Claims Order, any other objections made by any party that were not the subject of these motions are hereby deemed **waived**.  Because the court has now resolved all outstanding objections to the PACA claims, it **orders** the parties to confer and file an amended PACA Claims Chart consistent with its rulings in this memorandum opinion and order no later than **January 4, 2010**,  and to move for final distribution of the PACA Trust assets and judgment no later than **January 11, 2010**.  The parties shall submit a proposed judgment, including any amount of prejudgment interest owed to each PACA claimant and the date on which such prejudgment interest began to run.  The parties' proposed judgment must compute prejudgment interest running through January 29, 2010.  Any objections to the proposed judgment shall be filed by **January 22, 2010**,  and such objections must be specific.  If any party contends that the amount of prejudgment in the proposed judgment is incorrect, that party must state the amount it believes is correct and the basis therefor.  The court will then consider any objections and shall enter judgment on January 29, 2010.

**It is so ordered** this 25th day of November, 2009.


Sam A. Lindsay
United States District Judge